Froessel, J.
In this declaratory judgment action, we are called upon to decide whether plaintiff, a tenant stockholder of Amalgamated Housing Corporation, a private limited dividend co-operative corporation organized under the State Housing Law, may be properly subjected to a surcharge of 25% upon his rental or evicted from his apartment. The issues presented involve the applicability to plaintiff and Amalgamated of the Public Housing Law, and, in particular, subdivision 3 (par. [b]) of section 182 thereof, and, if so, the constitutionality of such application.
Subdivision 3 (par. [b]) of section 182, relating to co-operative housing companies and projects, provided at the time this action was instituted that apartments in such projects “ heretofore or hereafter constructed ’ ’ shall be available for persons or families whose probable aggregate annual income does not" exceed a 6 to 1 or in some cases a 7 to 1 income to rental ratio. It was also provided therein that an occupant whose income increases beyond the prescribed ratios may be permitted to remain in occupancy for three years with possible extensions, subject to approval by the Housing Commissioner. While plaintiff’s appeal in this action was pending in the Appellate Division, the Legislature added the following clause to paragraph (b) of subdivision 3, effective March 8, 1960: “ However, the rent of such occupant [allowed to remain by permission of the commissioner though his income has increased above the statutory maximum] shall be increased in proportion to his ability to pay more, the amount of increase to be ruled upon and prescribed by the housing company with the approval of the commissioner.” (L. I960, ch. 160.) Under familiar principles, we pass upon the applicability and validity of the statute as it existed on the date of this appeal, rather than the date of the commencement of this *546 action (Strauss v. University of State of N. Y., 2 N Y 2d 464, 467; Black Riv. Reg. Dist. v. Adirondack League Club, 307 N. Y. 475, 486-487; Quaker Oats Co. v. City of New York, 295 N. Y. 527, 536).
Treating first with the question of the applicability to plaintiff and Amalgamated of the income qualification, surcharge and eviction provisions of subdivision 3 (par. [b]) of section 182, it is principally urged by plaintiff that his occupancy is controlled exclusively by the provisions of the old State Housing Law, which allegedly did not impose like qualifications upon occupancy.[1] The Legislature, however, has by express direction and other manifestations of legislative intent indicated otherwise. Plaintiff’s contention, therefore, is without substance.
In 1939 the State Housing Law was replaced by sections 170-193 of the Public Housing Law. Section 193, though preserving the existence of private limited dividend housing companies already organized under the State Housing Law, such as Amalgamated, expressly made them “ subject to the duties, restrictions and liabilities ” of the Public Housing Law. Some question as to the extent of the application of the Public Housing Law to them may arguably be raised by the qualification in section 193 preserving “ rents However, any possible doubt as to the application of section 182 (subd. 3, par. [b]), including its provisions as to rents, has been conclusively dispelled by the 1949 amendments (L. 1949, chs. 616, 761) of paragraphs (a) and (b) of said subdivision 3, introducing the word “ heretofore ” into the subdivision, which previously read “ hereafter ” only. These amendments were expressly designed to overcome the decision of this court in Weinfeld v. Knickerbocker Vil. (286 N. Y. 590, affg. 261 App. Div. 383, followed in Knickerbocker Vil. v. Lackow, 191 Misc. 874, affd. 191 Mise. 883, affd. 274 App. Div. 993), which had limited the application of section 182, in accordance with the specific restriction therein contained, to projects constructed “ hereafter ”, i.e., after 1939. The 1949 amendments, in consequence, rendered section 182 applicable to all housing company projects, whether the corporation was incorporated hereafter or ‘ ‘ heretofore ’ ’, and whether the *547 project of the corporation was constructed hereafter or “ heretofore ” (see N. Y. Legis. Ann., 1949, pp. 228-229).
Concluding then that section 182 (subd. 3, par. [b]) is clearly applicable to plaintiff and Amalgamated, we turn to the second issue presented, namely, whether such application violates constitutional guarantees. The claim is made that by subjecting Amalgamated and plaintiff in particular to income ratios as a condition of continued occupancy, and to surcharges in the event occupancy is permitted to continue, there is an impairment of contractual obligations and talcing of property without due process of law.
The contract, now allegedly impaired, plaintiff maintains, was “ previously made on the faith of the State Housing Law ”; so, too, the property rights now allegedly taken away in violation of due process derived from that contract and, in turn, the State Housing Law. By the express terms of the State Housing Law, however, any such contract and rights acquired thereunder were qualified ones. That law was designed to eradicate the ‘ ‘ congested and unsanitary housing conditions ’ ’ existing ‘ ‘ in certain areas of the State in low priced dwellings ” through the formation of limited dividend housing corporations to construct new housing facilities “ in accord with proper standards of sanitation and safety ” “at a cost which will permit monthly rentals which wage earners can afford to pay ” (State Housing Law, § 2, Legislative Finding;[2] emphasis supplied).
Amalgamated in return for the privilege of incorporation under the statute, with the attending benefits conferred — such as tax exemptions in particular (State Housing Law, § 39) — expressly agreed in its certificate of incorporation “ that all real estate acquired by it and all structures erected by it, shall be deemed to be acquired for the purpose of promoting the public health and safety and subject to the provisions of the state housing law.” (State Housing Law, § 30, subd. 13; emphasis supplied.) Needless to say, the State Housing Law thus incorporated by reference into Amalgamated’s charter, by which it and of necessity its stockholder tenants were bound, was always subject to change in the future (here by Public Housing Law, *548 § 182) as required to effectively promote the objects for which the statute was enacted-.
It could hardly be maintained that the amendments' to section 182 here in issue — in particular those requiring eviction— were other than reasonable revisions of the statute and the rights derived thereunder, designed' to promote the objects of the statute and the public health and safety. The specific object of the statute was to eradicate slum-dwellings by providing the occupants of such premises safe "and-sanitary low-cost apartments to which they could remove. The occupants'- of these slums.were and are, generally speaking, the <£ wage earners ’’ of whom the statute’s' findings spoke initially, and who were later more specifically classified by reference to income to rental ratios. By promoting the vacancy of apartments in subsidized projects, reasonably based1 upon' an increase in • the tenant’s income sufficient to-permit him to relocate in nonsubsidized housing, those not as fortunate in lower income brackets, constrained theretofore to remain in their slum dwellings, are afforded the opportunity to remove therefrom and, in time, slum areas are lessened.
The provisions imposing a surcharge in lieu of eviction upon attaining a certain income level also have a tendency to promote the statutory' purpose as do the eviction provisions, since a tenant subjected to a surcharge" may thereby be induced to remove to better accommodations." Be that as it may, the Legislature, having the power to require removal upon the tenant’s attaining a certain income level, could, in our opinion, properly enact within its discretion alternative provisions in amelioration of its right to require removal. Specifically, it could, as here, impose a surcharge commensurate with an increase in income above the statutory maximum.
We have concluded thus far that plaintiff and Amalgamated may constitutionally be subjected to the provisions of section 182 (subd. 3, par. [b]) of the Public Housing Law, containing income qualification, surcharge and eviction provisions. One question now remains: As of what date did plaintiff become subject to the surcharge? The problem arises because of the'fact that until March, 1960, as we have, previously noted,, paragraph (b) of subdivision 3,. although containing a maximum income provision for continued occupancy, did not contain a sur *549 charge provision. Prior to that time the surcharge was imposed solely by virtue' of the Commissioner’s Regulation No. 12. The' basic issue then is the validity of the regúlátion prior to the time of amendment.
Special Term upheld the surcharge as authorized and valid by reading the provisions of paragraph (a) of subdivision 3 (relating to non-co-operative housing) into paragraph' (b). The Commissioner on this appeal urges that we do the same. It is contended that the failure to include the provision in the statute' prior to March, 1960 was but a legislative oversight; that the amendment sought merely to clarify the law as it existed theretofore; and, in any event, it was authorized to impose the surcharge under its general regulatory powers.
The historical development of paragraph (b) of subdivision 3 clearly demonstrates that the purpose of the .provision was to accord tenants in co-operative projects under the act separate and special treatment in light of the fact that they had to purchase stock as a condition precedent to occupancy. This is apparent from the memorandum of the- Division of Housing itself at the time paragraph (b) was enacted (N. Y. Legis. Ann., 1948, p. 227) and by the very provisions of paragraph (b) (L. 1948, ch. 610). Thus paragraph (b) was introduced by the phrase “Notwithstanding the provisions of paragraph (a) ”; and it initially provided that the income to rental ratio for continued occupancy in co-operatives was to be 7 to 1 and 8 to 1 as opposed to 5 to 1 and 6 to 1 for non-co-operative housing under paragraph (a); and, further, an unlimited grace period, within the discretion of the Commissioner,- for continued occupancy of over-income tenants was provided. In 1951, when the surcharge provisions were introduced into paragraph (a) (L. 1951, ch. 532), a like provision was not added to paragraph (b), and, when amending paragraph (b) in 1960, the Legislature in a1..note annexed to the amendment (1 Laws of New York, 1960,:p. 920, n't) expressly recognized that it had theretofore accorded tenants in co-operatives special treatment, particularly in regárd'.tp surcharges. -
In our opinion, therefore, the Commissioner’s regulation imposing surcharges on co-operatives prior to the 1960 amendment was invalid. It contravened the demonstrated legislative intent to accord co-operatives separate and special treatment as *550 to surcharges until the time of the amendment. If the Legislature in pursuance of such a policy decided not to impose such a requirement upon continued occupancy in co-operatives, the Commissioner lacked the power to do so either under his general regulatory powers, or by reading paragraph (a) into paragraph (b). In view of the statutory history of paragraph (b) and the 1960 amendment, it can hardly be maintained that the legislative omission to impose surcharges on co-operatives was other than intentional.
Finally, it may not be maintained that the 1960 amendment is retroactive in effect, thereby validating the Commissioner’s imposition of surcharges nunc pro tunc. There is no indication by the Legislature that it was to be so, and in accordance with general principles of statutory construction it is operative prospectively only (Matter of Ayman v. Teachers’ Retirement Bd., 9 N Y 2d 119, 125).
Accordingly, the judgment below should be modified to the extent of providing that plaintiff was not subject to a surcharge prior to March 8, 1960, and, except as so modified, affirmed, without costs.
Chief Judge Desmond and Judges Dye, Fuld, Van Voorhis, Burke and Foster concur.
Judgment modified in accordance with the opinion herein and, as so modified, affirmed, without costs.

. (See, however, Regulation No. 31 of the old Board of Housing, quoted in Tropp v. Knickerbocker Vil., 205 Misc. 200, 206-207, affd. 284 App. Div. 935.)

. This section was substantially re-enacted as section 2 of the Public Housing Law. (See, also, N. Y. Const., art. XVIII, § 1.)